**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KLEATUS McMANUS,        *

Plaintiff        *

v        *        Civil Action No. ELH-19-1402

LT. S. ELLIOTT,        *
R. FOXWELL, *Former Warden,*
DRYDEN, *Chief of Security,*        *

Defendants        *
              ***

**MEMORANDUM OPINION**

Kleatus McManus, who is self-represented, is incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland. He filed suit pursuant to 42 U.S.C. §1983 (ECF 1), as supplemented (ECF 5), alleging that his placement in an "isolation cell" at ECI for five days constituted cruel and unusual punishment. He also complains that he received inadequate medical care.

The defendants are Lieutenant Stephen Elliott; former Warden Ricky Foxwell; and Ronald Dryden. They have moved to dismiss or, in the alternative, for summary judgment. ECF 10. Their motion is supported by a memorandum (ECF 10-1) (collectively, the "Motion") and several exhibits.

Pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), the court informed McManus of his right to respond, and advised that he should file affidavits, declarations, and exhibits with his response to contest defendants' submissions. McManus filed a response in opposition (ECF 16), but he did not submit any affidavits or exhibits.

The matter is ripe for disposition. Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Motion, construed as a motion for summary judgment, will be granted

## I. Factual Background

### A. Plaintiff's Allegations

In plaintff's unverified Complaint and supplement, he alleges that on October 27, 2017, he was placed in "disciplinary segregation" Housing Unit ("HU") No. 4 after engaging in a verbal dispute with Warden Foxwell. ECF 5 at 1.[1] McManus was escorted to cell HU 4-C-48, where he observed that the inmate occupying the cell was suffering from mental illness. Specifically, he noted that his would-be cellmate was "fully nude" and pacing the floor "while talking to himself." *Id.* McManus immediately informed Officer Stergis that he did not feel "comfortable or safe" in that cell, and wanted to speak to the officer-in-charge ("OIC"). Stergis informed McManus that he would not be moved and ordered him to "step in the cell." *Id.* McManus "complied, but failed to relinquish the handcuff[s] in order . . . to speak to the OIC." *Id.*

Lieutenant Elliott was the housing unit manager of Housing Unit 4, the designated housing unit at ECI for inmates on administrative segregation. ECF 10-3 (Declaration of Stephen Elliott). Stergis used his radio to alert the OIC, Lieutenant Elliott, that McManus refused to return the handcuffs. ECF 5 at 1, 2. Elliott arrived at the cell a few minutes later. *Id.* at 2.

McManus informed Elliott about his safety concerns and asked to be moved. *Id.* Elliott questioned McManus as to why he was on segregation. In response, McManus said "'the Warden said I was going to fuck him up.'" *Id.* Elliott then ordered Officers Stergis, Westbrook, "Cowboy

---

[1] Citations are to the pagination assigned by the court's electronic docket.

(alias)," and Thorn to remove McManus from the cell and place him in cell HU 4-B-1, which McManus describes as an "isolation cell." *Id.* Then, six officers "forcefully stripped" him of his clothing while he was restrained in leg shackles, with handcuffs behind his back. ECF 1 at 2; ECF 5 at 1, 2. Two officers then "forcefully" bent plaintiff over at the waist, while he was "fully naked," and a third officer "inspected" his anus. *Id.* ECF 5 at 2.

McManus claims he was left in the cell for five consecutive days, without clothes, and without a mattress. ECF 1 at 2. He slept on a cold, dirty floor, and was denied personal hygiene items, toilet paper, and showers. He alleges that he developed a rash on 75% of his body from sleeping on the floor and from the lack of a shower. McManus informed several officers that he needed medical attention. He was told that he "cannot see medical" until he is discharged from the cell. *Id.*

As relief, McManus seeks $50,000 in punitive damages from each defendant for subjecting him to cruel and unusual punishment. *Id.* at 3.

**B.       Defendants' Response**

In support of their Motion, defendants have filed verified copies of McManus's prison records, medical records, and declarations. ECF 10-2; ECF 10-3; ECF 10-4; ECF 10-5; ECF 10-6. As noted, McManus has not filed any exhibits or declarations to dispute defendants' exhibits. ECF 16. The information in defendants' exhibits is summarized below.

**1.       McManus's Encounter with Foxwell**

On October 27, 2017, Warden Foxwell was standing near the dining hall at ECI while inmates were walking to lunch. ECF 10-2 (Foxwell Declaration), ¶3. McManus approached Foxwell to discuss a medical concern and a personal property issue. Foxwell advised him to use the proper channels to inform his housing unit manager about the problems and, if the problems

were not resolved, to write a note to Foxwell. *Id.* McManus became argumentative, and he told Foxwell: "'I am going to fuck you out.'" *Id.* After Foxwell was threatened, Foxwell called an officer to handcuff McManus and escort him to Housing Unit 4. ECF 10-2, ¶3. Foxwell states he was not involved in determining which cell in Housing Unit 4 McManus was placed. *Id.*

### 2. Assignment to cell HU 4-C-48

During the relevant time, Lt. Elliott was the housing unit manager of Housing Unit 4, which was the designated Unit at ECI for inmates placed on administrative segregation. ECF 10-3 (Elliott Declaration), ¶ 3. Elliott's duties as housing unit manager did not include screening McManus's placement in cell HU 4-C-48. *Id.* ¶4.

Elliott encountered McManus when he responded to a call that McManus had refused to return the handcuffs after he was placed in the cell. When Elliott asked McManus why he was being placed in administrative segregation, McManus answered that he was accused of threatening Foxwell. Elliott "then witnessed [McManus] repeat the threats against the warden and he was advised that he was going to be ticketed with an inmate rule violation for threats against the warden and for refusing the order to return the handcuffs." *Id.* ¶5.

Elliott explains that institutional security procedures[2] provide that while an inmate is awaiting a hearing on a rule violation charge, the inmate is placed in housing for Administrative Segregation Pending Adjustment ("Admin Seg PA"). *Id.* ¶6. Further, in accordance with institutional policy, once McManus threatened Foxwell, he was considered a security risk and was

---

[2] Defendants did not file a copy of the institutional policy.

placed on Staff Alert Level II.  *Id.*, ¶ 7; ECF 10-4 (ECI records) at 2, 7.  Accordingly, McManus was moved to Staff Alert cell HU 4-B-1.  *Id.*[3]

### 3.  Staff Alert Cell HU 4-B-1

Per institutional policy, an inmate on Staff Level II is escorted to the Staff Alert cell, handcuffed from behind, and, once inside the cell, is strip searched for contraband.  ECF 10-3 (Elliott Declaration), ¶8.  The strip search includes an anal cavity inspection that consists of the inmate bending over at the waist, assisted by officers because the inmate is handcuffed, so that the anal cavity can be inspected.  *Id.*

Strip search protocol for an inmate on Staff Alert calls for officers to place the inmate in the cell facing the back wall, remove the inmate's shirt down to the inmate's wrists while the handcuffs are in place, and then application of a second set of handcuffs on the inmate's wrists so that the shirt can be removed while handcuffs remain in place for the safety of the officers.  Once the strip search is completed, the inmate, still naked from the search, remains handcuffed for officer safety until the handcuffs are removed through the cell door security slot after officers have left the cell.

Notably, Elliott avers that the inmate's clothes are left in the cell so that the inmate can get dressed after officers leave the cell.  *Id.*  Moreover, he asserts that he never issued an order for plaintiff to remain naked while on Staff Alert, nor did plaintiff ever request clothing.  *Id.*

Staff Alert cells do not have a bunk bed or mattress.  But, they are equipped with a toilet and a sink.  And, Level II Staff Alert inmates, like McManus, are permitted to have their property from their previously assigned cell, including their mattress and toiletry items.  *Id.* ¶9.

---

[3] Had plaintiff physically assaulted a staff member, he would have been placed on Staff Alert Level I.  ECF 10-3, ¶ 7.

Level II inmates are permitted three showers each week. *Id.* ¶11. An inmate on Staff Alert II is periodically assessed by staff to determine if he remains a risk or threat to staff or other inmates, or can be released from Staff Alert status. *Id.* ¶ 7; ECF 10-4 at 2.

Elliott states that McManus's property from his HU2 cell "would have been transferred to his Staff Alert cell within a day." *Id.* ¶ 9. However, due to the high volume of inmates placed on Staff Alert, "no record is kept of the incidental transfer of the inmate's property to his Staff Alert cell." *Id.* Elliott also states he had no direct involvement in the transfer of McManus's property to the Staff Alert cell, nor did Elliott cause McManus to be deprived of any personal property during the time he was on Staff Alert. *Id.*

The HU4 Staff Alert cell is located where correctional staff would have passed often, giving McManus "numerous daily opportunities to either request medical attention, shower, or ask for his mattress and toiletry items, if he had not received them." *Id.* ¶10. Elliott denies directly or indirectly causing McManus to be deprived of a mattress, toiletry items, showers or medical attention. *Id.*

McManus's Record of Segregation Confinement sheet, the record that documents daily inmate out-of-cell activity, including showers, is blank for October of 2017, when he was first placed on staff alert. *Id.* ¶11; ECF10-4 at 3. McManus's daily out-of-cell activity is documented for November of 2017. ECF 10-3, ¶11; ECF10-4 at 4. Elliott avers that he was not involved in maintaining Record of Segregation Confinement sheets. ECF 10-3, ¶ 11. Nor does he "have any explanation as to why [the confinement sheet] is blank" for October 2017. *Id.*

McManus remained on Staff Alert for five days. Then, he was moved to another cell with a different cellmate than before, and remained on "Admin Seg/PA" until his rule violation hearing on December 8, 2017. *Id.* ¶12.

### 4. Notice of Inmate Rule Violation

Elliott wrote a Notice of Inmate Rule Violation on October 27, 2017, charging McManus with violating Rule 104 (use of intimidating, coercive, or threatening language); Rule 312 (interfering with or resisting the performance of staff duties); and Rule 400 (disobeying an order). ECF 10-4 at 7-8. On December 8, 2017, a hearing officer found McManus guilty of violating Rules 312 and 400, but not guilty of violating Rule 104. *Id.* at 11. McManus was sanctioned with 45 days of segregation. *Id.*

### 5. Medical Records

McManus received medical treatment for a skin rash on September 21, 2017, after he filed a sick call request for a "serious rash" on his arms and chest that had started in August. ECF 10-5 (Medical Records) at 2, 3. He was prescribed Tolnaftate[4] for the rash. *Id.* at 3.

On September 27, 2017, McManus submitted a sick call request for a "very bad" rash on his back, legs, and arms that had started in August. *Id.* at 5. On September 30, 2017, he was examined by a medical provider who prescribed hydrocortisone cream for the rash. *Id.* McManus reported the rash had started in August. *Id.*

Defendants assert the only medical complaint McManus filed "immediately after his release from Staff Alert on November 2, 2017," concerned his medication for lower back pain. *See* ECF 10-5 at 8, Sick Call Request, November 3, 2017.

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in the alternative

---

[4] Tolnaftate stops the growth of fungi that cause skin infections, including athlete's foot, jock itch, and ringworm. Tolnaftate comes as a cream, liquid, powder, gel, spray powder, and spray liquid for application to the skin. *See* https://medlineplus.gov.

implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.' " *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.' " *Scott v. Nuvell Fin. Servs.*, LLC, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v.*

*Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), aff'd, 266 F. App'x 274 (4th Cir. 2008), cert. denied, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because " 'the failure to file an affidavit ... is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.' " *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach,* 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.' " *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney,* 656 Fed. App'x at 638.

McManus has not filed an affidavit under Rule 56(d). In his opposition, however he asks for assistance to obtain photographs of "4 isolation cells and all video footage the institution has

of inmates going into the "isolation." ECF No. 16 at 3. McManus provides no reason for the photographs. He asserts the video footage will show the cruelty and harsh treatment of being deprive[d] [of] a mattress, clothing, and harsh treatment." *Id.* Even if this overly broad request for discovery were limited to the five-day period he was housed in the Staff Alert cell, McManus fails to proffer how this information is material to defendants' involvement in the matters he alleges or adds additional information to allegations already contained in the Complaint. In other words, he fails to allege how this discovery is needed to create a genuine issue of material fact, sufficient to defeat summary judgment.

I am satisfied that it is appropriate to address defendants' Motion as one for summary judgment, as this will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." Id. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc*., 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd,* 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), cert. denied, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.,* 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion,* 720 F.3d 169, 173 (4th Cir. 2013).

A district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Moreover, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313

(4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Where, as is the case, the submissions of pro se litigants are liberally construed by the court, s*ee Erickson*, 551 U.S. at 94 but, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## III. Discussion

Mindful that McManus is a self-represented litigant, I must liberally construe the Complaint and supplement. McManus claims defendants' actions violated his rights under the 14th Amendment. ECF 1 at 2. The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees. *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992). However, McManus was serving a judgment of conviction at the time of the incident. Therefore, I will consider his allegations as raising claims under the Eighth Amendment to the Constitution. And,

I will construe his Complaint, as supplemented, to raise claims with respect to use of excessive force, conditions of confinement, and denial of adequate medical care.

Defendants have moved for summary judgment on several grounds: (1) no facts are alleged against Dryden; (2) they did not personally participate in any alleged wrong doing; (3) the allegations fail to show deliberate indifference necessary to support an Eighth Amendment claim; (4) his due process rights were not violated; and (5) defendants are entitled to qualified immunity.

**A.**

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins*

*v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal punctuation omitted)); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813

(1994); *see also Wilcox*, 877 F.3d at 170.

The Complaint names Ron Dryden as Chief of Security. Dryden served as the Assistant Warden, and he retired in 2015, after 30 years of State service. *See* ECF 10-6 (Declaration of Ronald Dryden). In 2017, he was a "contractual personnel consultant" at ECI, but he is now fully retired. *Id.* Defendants accurately observe that although Dryden is named in the caption of the Complaint, McManus sets forth no factual allegations against him in the body of his Complaint.

During the time of the incident at issue, Dryden "was acting in a purely consultative capacity and had no direct interaction with Plaintiff or any other inmates." ECF 10-6, ¶ 3. Further, Dryden avers that he "did not have any involvement whatsoever in the daily administration of institutional duties related to Plaintiff or any of the other inmates." *Id.*

No evidence has been presented to refute Dryden's assertions. Therefore, there is no basis on which a jury could reasonably find for the plaintiff and against Dryden.

As to Foxwell, McManus does not allege that Foxwell ordered him to be placed in a specific cell on Housing Unit 4 or that Foxwell participated in or was aware of his resulting treatment. In his opposition to the Motion, McManus asserts that "all institutional policy" is implemented by the "warden/consultant." ECF 16 at 3. This conclusory assertion fails to specify which institutional policy or policies are constitutionally infirm or otherwise violate federal law.[5] McManus cannot create a genuine dispute of material fact through mere speculation. *Othentec*

---

[5] McManus also seems to claim that the Warden's implementation of institutional policy constitutes a criminal action. ECF 16. This claim is devoid of factual or legal basis, and such a charge may not be presented in this civil proceeding. A federal prosecutor must file criminal charges in this court because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Notably, "[a] private person may not initiate a criminal action in the federal courts." *Ras-Selah: 7 Tafari: El v. Glasser and Glasser PLC*, 434 F. App'x 236, 236 (4th Cir. 2011) (per curiam); *see also Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) ("It is a truism . . . that in our federal system crimes are always prosecuted by the Federal Government[.]")

*Ltd. v. Phelan*, 526 F.3d 135, 141 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)); *Matsushita*, 475 U.S. at 586-87 (explaining that a properly made and supported motion for summary judgment shifts the burden to the party opposing summary judgment to present evidence there is a genuine dispute of material fact).

Similarly, McManus proffers no evidence to dispute Elliott's Declaration that he was not involved in the initial cell placement in Housing Unit 4, the strip search of plaintiff in the Staff Alert cell, or the alleged deprivation of personal property, showers, or medical attention. ECF 10-3, ¶¶ 4, 9, 10, 11.[6]

Accordingly, Dryden, Foxwell, and Elliott are entitled to summary judgment as a matter of law.

In the alternative, even assuming personal involvement of one or more of the defendants, plaintiff's claims must fail, for the reasons that follow.

## B.

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Notably, the Amendment "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . . .'" *Id.* at 102 (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The protection

---

[6] As noted, the Staff Alert cell was equipped with a sink. Therefore, it is likely that McManus had access to water for personal hygiene.

conferred by the Eighth Amendment also imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Eighth Amendment is violated when an inmate is subjected to "'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg*, 428 U.S. at 173).

Notably, "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley*, 475 U.S. at 319-20). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

### 1. Excessive Force

In *Graham v. Connor*, 490 U.S. 386 (1989), the touchstone case with respect to excessive force claims under § 1983, the Supreme Court rejected the notion "that all excessive force claims

brought under § 1983 are governed by a single generic standard." *Id.* at 393. The Court held that claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against "unreasonable" seizures; claims of excessive force against a convicted prisoner are governed by the Eighth Amendment's prohibition of "cruel and unusual punishment"; and claims of post-arrest excessive force against an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits "the use of excessive force that amounts to punishment." *Id.* at 394 & n.10.

The contours of a prisoner's constitutional right to be free from excessive force at the hands of corrections staff has long been established. As the Fourth Circuit recently reiterated in regard to an Eighth Amendment excessive force claim, such a claim "involves both an objective and a subjective component." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). The objective component does not set "a high bar," and "asks whether the force applied was sufficiently serious to establish a cause of action." *Id.* The subjective component "asks whether the officers 'acted with a sufficiently culpable state of mind[.]'" *Id.* (citation omitted). And, "this is a demanding standard." *Id.*

To establish an Eighth Amendment violation for use of excessive force, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761. With respect to the subjective element, an inmate must show that the prison guards used force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotations and citations omitted). In other words, to show that a defendant acted

with a "sufficiently culpable state of mind" (the subjective component), *Wilson,* 501 U.S. at 298, a plaintiff must show "wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7; *see Whitley*, 475 U.S. at 320-21. In making this assessment, a court considers several factors: " '(1) the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat; and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko,* 535 F.3d at 239 (quoting *Whitley,* 475 U.S. at 321).

The extent of injury is one factor indicative of whether the force used was necessary in a particular situation. But, if force is applied "gratuitously," maliciously, or sadistically, liability is not avoided simply because the prisoner had "the good fortune" to escape serious harm. *Wilkins*, 559 U.S. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.") And, only something more than de minimis force is required. *Hudson*, 503 U.S. at 10; *see Brooks*, 924 F.3d at 112.

Moreover, the absence of significant injury is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam). If "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. In that circumstance, "no particular extent of physical injury is required to establish an excessive force claim . . . ." *Sawyer v. Asbury*, 537 Fed. App'x 283, 290 (4th Cir. 2013). On the other hand, "'not every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9).

The "state of mind required . . . is 'wantonness in the infliction of pain.'" *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 322). As indicted, this "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (internal quotation marks omitted).

Here, McManus asserts that correctional officers, none of whom is named as a defendant, "forcefully" removed his shirt and bent him over to inspect his anus. In his opposition, McManus asserts that stripping an inmate in full restraints is a criminal act which "violates several laws and statutes," which must be performed by qualified health care personnel. ECF 16 at 2.[7] McManus does not assert that the officers' actions were malicious or sadistic, intended to harm him, continued after the strip search was performed, or that he in fact suffered any injury. To the extent that any physical force was used, there is no evidence that it exceeded the force necessary to conduct the strip search required for Staff Alert cell placement.

McManus has failed to come forward with his own sworn statement or other evidence to support a claim that, to the extent physical force was used, it was unnecessary.

## 2. Conditions of Confinement

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta*, 330 F.3d at 634. Conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. And, demonstration of an extreme

---

[7] *See* note 5, *supra.*

deprivation proscribed by the Eighth Amendment requires proof of "'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 770); *see also Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

In order to establish the imposition of cruel and unusual punishment on this basis, a prisoner must prove two elements - that "'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson*, 501 U.S. at 298-300).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. In other words, "'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Deprivation of a bed in a correctional facility does not necessarily transgress such a line. *See Lowery v. Bennett,* 492 F. App'x 405, 407, 410 (4th Cir. Aug. 9, 2012) (unpublished) (10-day placement on strip-cell confinement, which included removal of prisoner's personal hygiene items, religious books, mattress, bedding, towels, and clothing, did not violate Eighth Amendment); *Yarborough v. Robinson*, 166 F.3d 337, 1998 WL 879660 * 2 (4th Cir. Dec. 17, 1998)

(unpublished ) (A four day denial of showers does not constitute an Eighth Amendment violation). *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, running water, bedding, legal mail or hygienic supplies not a violation of Eighth Amendment); *Crowe v. Leeke*, 540 F.2d 740,741-42 (4th Cir. 1976) (newly arrived prisoners sleeping on floor while facility under construction does not state claim).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler,* 989 F.2d at 1381; *see De'Lonta,* 330 F.3d at 634; *Odom,* 349 F.3d at 770. This claim is deficient in several respects.

Of course, prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Wilkinson v. Austin,* 545 U.S. 209 (2005). "The Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions . . . ." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily...fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502, 503 (4th Cir. 1997).

Plaintiff's claim of a serious rash falls short of showing that the conditions he describes. McManus alleges that conditions in the Staff Alert cell were uncomfortable and harsh, but there is no dispute that they were limited and brief in duration and not so severe that defendants could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ*., 447 F.3d 292, 313 (4th Cir. 2006) (citing *Hope v. Pelzer*, 536 U.S. 730, 741

(2002)). The restrictions alleged in regard to McManus's brief placement on Staff Alert did not amount to cruel and unusual punishment.

There are no factual allegations from which I could infer that McManus's five-day placement in a Staff Alert cell imposed an atypical or significant hardship on him in relationship to the ordinary incidents of the prison life of inmates.

### 3. Medical Care

Notably, "[i]t is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko*, 535 F.3d at 241. The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Schilling*, 937 F.3d at 357; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219.

A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228. Proof of an objectively serious medical

condition, however, does not end the inquiry. As the Court explained in *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017), "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer*, 849 F.3d at 209-10.

In the context of a claim concerning medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Similarly, the Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young v. City of Mount Ranier,* 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (Citation omitted). Put another way, "it is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*); *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor,* 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.*; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."), *cert. denied*, 529 U.S. 1067 (2000). Moreover, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106). *See also Young*, 238 F.3d at 576 (stating that a Fourteenth Amendment deliberate inference claim requires more than a showing of "mere negligence"); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."). Further, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential

test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014); *see De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).[8]

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105.

But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather,

---

[8] As discussed, the Supreme Court has rejected the "significant injury" requirement in regard to an excessive force claim under the Eighth Amendment. *Wilkins*, 559 U.S. at 37-38; *see Danser*, 772 F.3d at 346 n.8 (distinguishing deliberate indifference claims).

a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W. Md. Health Sys. Corp.*, DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011).

In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

McManus alleges in his Complaint that he informed several unidentified officers that he needed medical attention. Assuming, *arguendo*, that McManus's rash was serious for the purpose of Eighth Amendment analysis, he fails to allege or provide facts to suggest that defendants had actual knowledge of this skin rash and deliberately chose to disregard a substantial risk of harm to

him, or otherwise hindered his access to medical care. *Lightsey*, 775 F.3d at 178 (In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction."). McManus fails to suggest defendants acted with requisite deliberate indifference to premise an Eighth Amendment medical claim.[9]

## IV.    Conclusion

For these reasons, I will grant defendants' Motion and enter judgment in their favor. A separate Order follows.

January 31, 2020                               _____/s/_____
Date                                           Ellen L. Hollander
                                               United States District Judge

---

[9]    Having found no constitutional violation, I will not address Defendants' qualified immunity defense.